Case 1:23-cv-00103 Document 18 Filed on 05/22/24 in TXSD Page 1 of 13

United States District Court
Southern District of Texas
**ENTERED**
May 22, 2024
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | |
|---|---|
| RAQUEL ARELLANO, § | |
|     Plaintiff, § | |
| § | |
| v. § | CIVIL ACTION NO. 1:23-cv-103 |
| § | |
| MARTIN O'MALLEY, § | |
| *Commissioner of Social Security,* § | |
|     Defendant. § | |

**MEMORANDUM AND OPINION ORDER
DENYING PLAINTIFF'S PETITION FOR REVIEW OF
DENIAL OF DISABILITY INSURANCE BENEFITS**

**I. Synopsis**

Plaintiff Raquel Arellano ("Arellano") seeks judicial review of a final decision by the Commissioner (the "Commissioner") of the Social Security Administration (the "SSA") denying her application for disability insurance benefits. At issue is whether there is substantial evidence to support the residual functional capacity ("RFC") determination by the Administrative Law Judge ("ALJ"). Arellano argues that "the ALJ failed to properly evaluate her subjective complaints of pain consistent with the two-part test set forth at §404.1529." Dkt. No. 15, p. 3.[1] Arellano requests the disability determination of the Commissioner be reversed.

Following the parties' consent to magistrate judge jurisdiction, the Court is empowered to enter a final disposition pursuant to 28 U.S.C. § 636(c)(1) and Local Rule 72. Dkt. No. 12. After review of the parties' briefing, the record, and the relevant law, the undersigned Magistrate Judge orders Plaintiff Raquel Arellano's petition for review of the denial of disability insurance benefits be denied**.**

---

[1] The citation to the record refers to the Bates-stamped number on each record page.

**II. Standard of Review**

This Court has jurisdiction pursuant to 42 U.S.C. § 405(g) to review a final decision of the Commissioner for claims arising under Title II of the Social Security Act, 42 U.S.C. § 421.

This Court's review of the Commissioner's decision is limited to determining whether the decision was supported by substantial evidence and whether the proper legal standards were applied in reaching this decision. *Anthony v. Sullivan,* 954 F.2d 289, 292 (5th Cir. 1992). Substantial evidence is that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion. *Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir. 1993) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Substantial evidence is more than a mere scintilla, but less than a preponderance. *Moore v. Sullivan*, 919 F.2d 901, 904 (5th Cir. 1990). "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficient evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). The Court's role in applying the substantial evidence standard is limited to making findings on the actions of the ALJ; it is not to "reweigh the evidence in the record, not try the issues *de novo*, nor substitute [the Court's] judgment for that of the [Commissioner's]. *Johnson v. Bowen*, 864 f.2d 340, 343. The decision by the ALJ must stand or fall on the rationale set forth in the ALJ's opinion. *Newton v. Apfel*, 209 F.3d 455, 458 (5th Cir. 2000). If the Commissioner's findings are supported by substantial evidence, they are conclusive and must be affirmed. 42 U.S.C. § 405(g); *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999). "Conflicts within the evidence are not for the court to resolve*." Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990).

The Court generally employs a harmless error standard in reviewing administrative proceedings. *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988) (holding procedural perfection in administrative proceedings is not required). The Court will not reverse a judgment unless the substantial rights of a party have been affected. *Id*.

**III. Disability Determination Process**

A plaintiff is not entitled to benefits under Title II of the Social Security Act unless they are disabled as defined by the Act. 42 U.S.C. § 423(d)(1)(A); *Heckler v. Campbell*, 461 U.S. 458, 459-61 (1983). Disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months. *Id.*

A claimant seeking Social Security benefits bears the burden of proving that he or she is disabled for purposes of the Social Security Act, 42 U.S.C.S. §1381. Once the claimant satisfies the initial burden, it is then the responsibility of the administrative law judge to utilize a five-step sequential process to determine whether the claimant can perform substantial gainful activity. This five-step process is set forth in 20 C.F.R. §§ 404.1520(b)-(f), 416.920(b)-(f). The burden of proof lies with the claimant at each step except for step five, which contains a shifting burden. *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5 (1987). If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary. 20 C.F.R. §§ 404.1520(a), 416.920(a).

At step one, the claimant must not be presently working at any substantial gainful activity. Substantial gainful activity is defined as work activity involving the use of significant physical or mental abilities for pay or profit. 20 C.F.R. §§ 404.1527, 416.972.

At step two, the claimant must have an impairment or combination of impairments that is severe. 20 C.F.R. §§ 404.1520(c), 416.920(c); *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985), cited in *Loza v. Apfel*, 219 F.3d 378, 392 (5th Cir. 2000).

At step three, disability will be found if the impairment or combination of impairments meets or equals an impairment listed in the Listing of Impairments, 20 C.F.R. Pt. 404, Subpt. P, App. 1. 20 C.F.R. §§ 404.1520(d), 416.920(d).

At step four, the impairment or impairments must prevent the claimant from returning to his past relevant work. 20 C.F.R. §§ 404.1520(e), 416.920(e). Past relevant work is defined as substantial gainful activity performed within the last fifteen years,

where the claimant's employment lasted long enough for the claimant to learn how it is performed. 20 C.F.R. § 404.1560(b)(1).

At step five, the impairment must prevent the claimant from doing any work, considering the claimant's residual functional capacity, age, education, and past work experience. 20 C.F.R. § § 404.1520(f), 416.920(f); *Crowley v. Apfel*, 197 F.3d 194, 197-98 (5th Cir. 1999). Residual functioning capacity "is an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities." *Irby v. Barnhart*, 180 Fed. App'x 491, 493 (5th Cir. 2006) (unpub.) (citing Social Security Ruling ("SSR") 96-8p).[2] At step five, once the Commissioner demonstrates that other jobs are available to a claimant, the burden of proof shifts to the claimant to rebut this finding. *Selders v. Sullivan*, 914 F.2d 614, 618 (5th Cir. 1990) (per curiam). If the Commissioner identifies the availability of alternative employment, the burden then shifts back to the claimant to prove that they are unable to perform the alternate work. *Taylor v. Bowen*, 782 F.2d 1294, 1298 (5th Cir. 1986); *Millet v. Schweiker*, 662 F.2d 1199, 1201 (5th Cir. 1981).

When the ALJ is considering an impairment and its RFC at step five, a two-part analysis is used. The first part is a determination of whether the claimant suffers from a medically determinable impairment that is "reasonably capable of producing" the claimed symptoms. SSR 16-3P (S.S.A. Oct. 25, 2017). Claimed symptoms "will not be found to affect [one's] ability to do basic work activities unless medical signs or laboratory findings show that a medically determinable impairment(s) is present." 20 C.F.R. § 404.1529(b). The ALJ proceeds to the second part of the inquiry only if the claimant is found to have a medically determinable impairment capable of causing the alleged symptoms. *Winget v. Astrue*, 2007 WL 4975206, *10 (W.D. Tex. 2007) (unpubl.). In

---

[2] The Social Security Administration's rulings are not binding on this court, but they may be consulted when the statute at issue provides little guidance. The Fifth Circuit has frequently relied upon the rulings in evaluating ALJ's decisions." *Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001).

other words, a claimant will not receive a positive disability determination if their impairment would not objectively and reasonably cause the reported symptoms. On the other hand, if the medical evidence objectively identifies an impairment that could reasonably produce the claimed symptom, the inquiry turns to the severity and impact of that symptom.

The second part of the analysis is to evaluate the "intensity, persistence, and limiting effects of the individual's symptoms" on a person's ability to do basic work activities. SSR 16-3P (S.S.A. Oct. 25, 2017). In performing this evaluation, the ALJ considers the objective medical evidence; the claimant's testimony; the claimant's daily activities; the location, duration, frequency, and intensity of the individual's symptoms; factors that precipitate and aggravate the symptoms; the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms. *Id.*

The ALJ also considers treatment other than medication that the individual receives or has received for relief of pain or other symptoms. 20 C.F.R. §§ 404.1529(c), 416.929(c). Finally, the ALJ also considers any other factors relating to the claimant's functional limitations and restrictions resulting from pain or other symptoms. *Id.*

## IV. Background

### a. Administrative Procedural History

Plaintiff Arellano filed an application for disability insurance benefits under Title II of the Act on March 8, 2021, alleging a disability onset of January 15, 2019, due to post-laminectomy syndrome, osteoarthritis of the knees, and diabetes. Dkt. No. 8-3, pp. 17, 20. The application was initially denied by the SSA on May 14, 2021, and again on November 12, 2021. Dkt. No. 8-5, pp. 78-93.

Subsequently, a hearing was held before Administrative Law Judge Carrie Kerber on October 13, 2022. Dkt. No. 8-3, p. 32.[3] ALJ Kerber issued an unfavorable decision

---

[3] The full transcript of this administrative proceeding is available for review at Docket Number 8-3, pages 32-52.

dated January 25, 2023, finding that Arellano was not disabled. Dkt. No. 8-3, pp. 17-26. Arellano filed an appeal of the ALJ's decision, and the Appeals Council ("AC") denied further review. Dkt. No. 8-3, pp. 1-3. Upon denial of further review by the AC, the ALJ's decision became the final determination of the Commissioner and ripe for judicial review.[4] On July 21, 2023, having exhausted her administrative remedies, Plaintiff initiated this action challenging the denial of benefits pursuant to 42 U.S.C. § 405(g), seeking to reverse the negative determination of no disability. Dkt. No. 1.

### b. Medical Evidence

Two state agency consultants, Dr. Dorothy Leong, M.D. ("Leong") and Dr. Laurence Ligon, M.D. ("Ligon"), reviewed Arellano's medical records regarding her physical abilities as part of the disability process. Dkt. No. 8-4, pp. 53-65 (Leong Notes); Dkt. No. 8-4, pp. 66-77 (Ligon Notes). Both Leong and Ligon opined that Arellano could sit or stand "for about 6 hours in an 8-hour workday." *Id.* at 60,69. They also noted that she could frequently kneel, crouch, and climb ramps or stairs. *Id.* The ALJ found the opinions of the state agency consultants persuasive as they were found to be consistent with most of the objective medical evidence. Dkt. No. 8-3, p. 25. All evaluations are meant to be considered by the ALJ and given significance based on supportability, consistency, relationship with the claimant, and other factors likely familiarity with other evidence or understanding of disability policies. 20 C.F.R. § 404.1520(a), (c)(1)-(5).

Several treating healthcare professionals also contributed significantly to Arellano's submitted medical history which spans several years of relevant medical treatment.

On August 22, 2016, Plaintiff underwent surgery on her right foot to correct hammer toe deformities present in the second through fifth digits of her foot. Dkt. No. 8-8, p. 319.

---

[4] When the Appeals Council declines review of the Administrative Law Judge's decision, the decision of the ALJ constitutes the final decision of the Commissioner, and the ALJ's factual findings and legal conclusions are imputed to the Commissioner. *See Higginbotham v. Barnhart*, 405 F.3d 332, 336 (5th Cir. 2005).

On October 7, 2016, Plaintiff underwent surgery on her right foot to correct acute plantar fasciitis with heal spur syndrome. Dkt. No. 8-8, p. 311.

On June 28, 2018, Plaintiff was evaluated by Carl Hicks, M.D., for issues related to her bilateral osteoarthritis of the knees. Dkt. No. 8-8, pp. 280-284. Notes indicate she complained of pain, particularly on her right-side, which was not alleviated by steroid injections. *Id.* at 282. Upon examination, Dr. Hicks found that she "gets around with no walking aid," yet she presented with an "antalgic gait. *Id.* at 283.

On July 22, 2019, Magnetic Resonance Imaging ("MRI") was done on Plaintiff's left knee. Dkt. No. 8-8, p. 436. Imaging revealed tri-compartment osteoarthritis, small knee effusion, and a tear of the medical meniscus. *Id.*

On February 17, 2020, Plaintiff underwent left knee arthroscopic surgery for a left medical meniscal tear performed by Jose Horton, M.D. Dkt. No. 8-8, pp. 409-410. Visualization during the procedure confirmed the imaging finding of a left medical meniscus tear. Dkt. No. 8-8. 427.

Throughout 2020, Plaintiff was seen by Joseph Horton, M.D., for treatment of her knee pain. Dkt. No. 8-8, pp. 343-378. Throughout that time, she received several evaluations for knee pain and often received knee injections as treatment. *Id.* As of November 2020, notes indicate that increasingly incredible pain was reported, but Arellano was able to ambulate/walk with the assistance of a knee brace. *Id.* at 345.

On February 5, 2021, Plaintiff underwent a left total knee arthroplasty performed by Rick Bassett, M.D., of Rio Grande Orthopedics. Dkt. No. 8-8, pp. 397-399.

On March 3, 2021, Plaintiff received a post-operative examination at Rio Grande Orthopedics and self-reported low-level pain in her knee, "2/10" and "4/10." Dkt. No. 8-8, p. 455. This is consistent with her pain reports to Rio Grande Orthopedics in March 2021. Dkt. No. 8-8, pp. 447, 451.

On March 9, 2021, Plaintiff presented to the office of her primary care physician, Juan Maldonado, M.D., and showed positive healing with a slow, steady gait requiring the use of a cane to walk. Dkt. No. 8-8, pp. 511-513.

On March 25, 2021, Plaintiff again received a post-operative examination at Rio Grande Orthopedics where she reported improvement and that previous physical therapy helped significantly. Dkt. No. 8-8, p. 447. At that point, she was able to ambulate with the assistance of a four-point walker. *Id.*

On March 31, 2021, Plaintiff presented to the office of her primary care physician, Juan Maldonado, M.D., and requested a referral to a specialist for burning sensations from suspected keloid scars around the left knee. Dkt. No. 8-8, pp. 499-501. Plaintiff was treated by Jay Walther, M.D., on April 1, 2021, for the keloid scarring. Dkt. No. 8-8, pp. 772-777.

From May 2021 through August 2021, Plaintiff received several physical therapy sessions for bilateral knee pain from Total Rehab. Dkt. No. 8-8, pp. 648-684. More specifically, by July 2021, Plaintiff had completed 11 visits with Total Rehab, and her ambulatory status was listed as, "walks unassisted." *Id.* at 641, 64.

In February 2022, Plaintiff's orthopedic surgeon, Dr. Rick Bassett, M.D., completed a check-box medical source statement which indicated that the Plaintiff did not require the use of an assistive ambulatory device and not did need unscheduled break periods during an 8-hour workday beyond the normally scheduled breaks. Dkt. No. 8-8, p. 686.

In May 2022, while visiting Rio Grande Pain Team, Plaintiff was able to ambulate without assistance despite rating her left knee pain as a nine on a ten-point scale. Dkt. No. 8-8, p. 689. Visual inspection and palpation of her back revealed normal thoracic kyphosis, no scoliosis, and no tenderness. Dkt. No. 8-8, p. 692.

In June 2022, imaging of Plaintiff's femur revealed mild osteoarthritis in the hip joint. Dkt. No. 8-9, p. 875.

In October 2022, imaging of Plaintiff's spine and hip was ordered. Dkt. No. 8-9, p. 872. The MRI of Plaintiff's lumbar spine revealed no evidence of lumbar spinal fracture, pathologic calcifications, or spondylolisthesis. Dkt. No. 8-9, p. 876. Concurrent imaging of Plaintiff's hips revealed no acute osseous abnormalities. *Id.*

### c. Hearing Testimony

At the hearing before the ALJ, Arellano testified that she has difficulty with standing and walking due to issues with her knees. Dkt. No. 8-3, pp. 42-48. Specifically, the Plaintiff testified that she "can't do much walking" but "could walk for about a block, two blocks, but then I'll be in pain." *Id.* at 43. She also testified that she had received one knee replacement surgery, and the surgery to replace her other knee had not yet been scheduled. *Id.* at 41. When asked to describe her ability to sit, Arellano testified that she could sit for "about three, four hours … then I could get up, and you know, again, take my time getting up." *Id.* at 45. Arellano addressed her back pain by saying that she experienced "a lot of pain, I get a lot of pain due to my limping … like it just depends, it depends." *Id.* She testified that she attempts to "bike every other day for five minutes, but it is very hard." *Id.* Arellano indicated that she was currently taking medication for management of pain, diabetes, thyroid disfunction, and high blood pressure. *Id.* at 42. According to her testimony, her diabetes and high blood pressure symptoms are well-managed with medication. *Id.* at 47. Upon examination by her attorney, Arellano admitted that she was prescribed and uses a cane to assist in physical activity. *Id.* at 48.

Vocational expert ("VE"), Michael Driscoll, answered hypothetical questions in relation to potential exertional limitations of a hypothetical individual of Arellano's age, education, and work experience. Dkt. No. 8-3, pp. 49-51. The VE testified that Arellano's previous work as a salesperson is classified as Specific Vocation Preparation-3 ("SVP-3"), light work, and could be performed even with additional limitations to avoid frequent climbing of ramps and stairs, occasional climbing of ladders/ropes/scaffolds, frequent kneeling and crouching, and occasional crawling. *Id.* at 50. The VE further testified that the skills acquired in the identified SVP-3 position are non-transferable. *Id.* at 51.

## V. Commissioner's Decision

Using the Social Security Administration's established five-step sequential evaluation process for determining whether an individual is disabled under 20 C.F.R. § 404.1520(a), the ALJ found Arellano not disabled.

At step one, the ALJ found that Arellano met the insured status requirements of the Social Security Act through December 31, 2023. Dkt. No. 8-3, p. 19. The ALJ further found that the Plaintiff had not engaged in substantial gainful activity since January 15, 2019, the alleged onset date. Dkt. No. 8-3, p. 20. At the second step, the ALJ noted the following severe impairments: "post-laminectomy syndrome; osteoarthritis of the knees, status post total knee arthroplasty surgery on the left; diabetes mellitus; obesity; and hypertension." *Id.* At the third step, the ALJ found that Plaintiff's impairments, considered alone or in combination, did not meet or medically equal the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* Next, the ALJ found that Plaintiff had the RFC to perform light work as defined in 20 C.F.R. 404.1567(b), except she can frequently climb ramps and stairs; she can occasionally climb ladders, ropes, or scaffolds; she can frequently kneel and crouch; and she can occasionally crawl. Dkt. No. 8-3, p. 21. In making this finding, the ALJ considered the Plaintiff's testimony, notes of various treating professionals, medical imaging, and the state agency RFC assessment completed by Dorothy Leong, M.D., which was affirmed by Laurence Ligon, M.D. Dkt. No. 8-3, pp. 21-25. The ALJ found that Arellano's medically determinable impairments could be reasonably expected to cause some of the alleged symptoms; however, her statements concerning the intensity, persistence, and limiting effects of those symptoms were not entirely consistent with the objective medical evidence and other evidence in the record. *Id.* at 25. Proceeding to the fifth step, the ALJ relied on the testimony of Michael Driscoll, as vocational expert ("VE"), to decide the type and level of work available to a person equivalent to Arellano's estimated RFC. *Id.* at 24-25. To determine the extent to which Plaintiff's limitations eroded the occupational base of light semiskilled work, the ALJ utilized the VE testimony regarding whether a person of Arellano's age, education, and work experience would be able to perform her past work as a salesperson given certain hypothetical limitations. *Id.* Consistent with the RFC determination and VE testimony, the ALJ found that Arellano can perform her past relevant work as a salesperson. *Id.* at 25.

Based on all this information, the ALJ found that Plaintiff had not been under a disability from the January 15, 2019, through the date of the decision. Dkt. No. 8-3, p. 26. More specifically, the ALJ found that based on the application for a period of disability and disability insurance benefits filed on March 8, 2021, the claimant is not disabled under sections 216(i) and 223(d) of the Social Security Act. The Appeals Council denied review of the ALJ's decision that Plaintiff was not disabled. Dkt. No. 8-3, p. 1-3.

## VI. Analysis

### a. Statement of Issues for Court's Review

On appeal, Plaintiff requests the court consider whether there is substantial evidence to support the ALJ's RFC determination, because the ALJ allegedly failed to properly evaluate Arellano's subjective complaints of pain consistent with the two-part test set forth at 20 C.F.R. § 404.1529. Dkt. No. 15. Plaintiff claims this led to an allegedly inappropriate determination of Arellano's RFC where she was found able to perform the walk/standing requirements of light work duties. *Id.*

In part one of the test under 20 C.F.R. § 404.1529, the ALJ found there to be objective medical evidence supporting a finding of diabetes, lower extremity nerve damage, post-laminectomy syndrome, osteoarthritis of the knees, and hypertension. Dkt. No. 8-3, p. 22. In part two of the test, the ALJ found that Plaintiff's subjective statements about the intensity and persistence of symptoms were not entirely consistent with the objective evidence. *Id.* Plaintiff argues that the ALJ failed to build a logical bridge between the objective evidence and Plaintiff's subjective statements. Dkt. No. 15, p. 15. More specifically, Plaintiff argues that the logical bridge "simply does not exist regarding the lumbar x-rays demonstrating advanced spinal disease." Dkt. No. 17, p. 4. Defendant Commissioner contends that the ALJ performed a symptom evaluation consistent with applicable regulations, and adequately considered Plaintiff's subjective complaints. Dkt. No. 16, pp. 6, 9. Additionally, the Plaintiff complains the ALJ erred in failing to consider Plaintiff's "stellar work history" before her alleged disability onset date. Dkt. No. 15, p. 14.

### b. Court's Findings

After consideration, this Court finds substantial evidence supports the ALJ's finding of no disability for Arellano and that the proper legal standards were used in the ALJ's making of this decision. The ALJ properly evaluated Arellano's RFC and reasonably found that Arellano can perform the requirements of light work with the noted limitations.

Plaintiff contends that the ALJ listed the factors within the decision, but "discussed none of them." Dkt. No. 15, p. 9. However, throughout their decision the ALJ details Plaintiff's written and hearing testimony of her pain symptoms and their impact on her ability to ambulate. Dkt. No. 8-3. The ALJ lists relevant 20 C.F.R. §404.1529 and SSR 16-3P factors explicitly, then more specifically details their application to the analysis of Plaintiff's case throughout the decision. Dkt. No. 8-3, pp. 17-26. The Fifth Circuit has previously considered a thorough textual discussion of the plaintiff's statements regarding applicable factors sufficient to provide the basis for judicial review as to the ALJ's consideration of those factors. *Dominguez-Herrera v. Astrue*, 334 F. App'x 651 (5th Cir. 2009) (unpublished). Here, the ALJ considered Arellano's statements regarding "activities of daily living" in relation to objective medical evidence by explicitly noting Arellano can "attend to her personal hygiene," admits to "going grocery shopping," and reports improved or increased mobility to her treating professionals. Dkt. No. 8-3, pp. 22-25. Moreover, the ALJ may choose to evaluate a claimant's subjective complaints when there are inconsistencies between those complaints and the records as a whole. *Vaughn v. Shalala*, 58 F.3d 129, 131 (5th Cir. 1995). The ALJ properly considered factors covering Plaintiff's pain and related complaints, including post-laminectomy syndrome, by consistently noting the progress of claimant's pain reports and the different imaging ordered by her treating professionals. *Id.* The ALJ further made clear that the degree of impairment was determined in light of the totality record evidence, and subjective symptoms were evaluated according to standards of 20 C.F.R. § 404.1529 and SSR 16-9p. *Id.* at 23. The ALJ cites specific results of MRI's and other medical imaging while all of the Plaintiff's various medical

conditions. Dkt. No. 8-3, pp. 23-25. The Court finds substantial evidence supports the ALJ's decision of no disability as to the Plaintiff.

Additionally, the Court rejects Plaintiff's argument that the ALJ erred in failing to consider Plaintiff's "stellar work history" before her alleged disability onset date. Although the regulations direct an ALJ to consider "information about [a claimant's] prior work record," 20 C.F.R. § 404.1529(c)(3), there is no binding authority in the Fifth Circuit requiring an ALJ to specifically reference the full extent of a claimant's length work history in determining an appropriate RFC when activities of daily living and objective medical evidence are also considered. *Botsay v. Colvin*, 658 F. App'x 715, 719 (5th Cir. 2016). Further, the Fifth Circuit has previously determined that an ALJ need not mechanically follow every guiding regulatory factor in articulating reasons for denying claims. *Clary v. Barnhart*, 214 Fed. App'x 479, 482 (5th Cir. 2007). The ALJ's reference to the absence of relevant work history during the disability period in combination with direct citation to the *Dictionary of Occupational Titles,* VE testimony, and Plaintiff's hearing testimony are sufficient to enable judicial review for the consideration of Plaintiff's work history. The Court's review finds substantial evidence to support the ALJ's determination of the availability of a light semiskilled job with an SVP of 3.

## VI. Conclusion

Based on the foregoing, the Court finds the proper legal standards were applied and substantial evidence supports the Commissioner's denial of social security benefits to Arellano.

Accordingly, it is **ORDERED** that Plaintiff Raquel Arellano's petition for review of the denial of disability insurance benefits (Dkt. No. 1) is **DENIED** with prejudice.

This is a final and appealable judgment that resolves all claims made in this case.

The District Clerk shall close this case.

Signed on May 22, 2024.

Karen Betancourt
United States Magistrate Judge